UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


WAYNE FLUKER                              CIVIL ACTION

v.                                        NO. 15-4138

MANSON GULF, LLC, ET AL.                  SECTION F


<u>ORDER AND REASONS</u>

Before the Court are three motions:  (1) Manson Gulf, LLC's and C&G Welding, Inc.'s partial motion for summary judgment on seaman status; (2) C&G Welding, Inc.'s motion for summary judgment on Jones Act negligence and seaworthiness; and (3) Manson Gulf, LLC's motion for summary judgment on seaworthiness.  For the reasons that follow, (1) Manson Gulf and C&G's partial motion for summary judgment on seaman status is DENIED; (2) C&G's motion for summary judgment on Jones Act negligence and seaworthiness is GRANTED; and (3) Manson Gulf's motion for summary judgment on seaworthiness is GRANTED.

**Background**

This personal injury lawsuit arises from an incident that occurred on a Fieldwood Energy LLC platform in the Mississippi Canyon Block 148A on August 1, 2015.  Wayne Fluker, who was working

as a welder for C&G Welding, Inc. on the beam on the platform deck, alleges that he was injured when an I-beam struck him in his face and head.  Mr. Fluker contends that the I-beam was lifted off the deck of the platform by a hook attached to the boom of the crane on the D/B E.P. PAUP, a vessel owned and operated by Manson Gulf, LLC.

Pursuant to a Master Service Agreement between C&G Welding and Manson Gulf, Mr. Fluker provided welding services to Manson Gulf.  Fieldwood Energy LLC had retained Manson Gulf to deconstruct one of its platforms in Mississippi Canyon Block 148A.

Employed by C&G as a welder, Mr. Fluker arrived on the D/B E.P. PAUP jobsite on July 29, 2015 and worked each day from midnight to noon until he returned to shore on August 7, 2015.[1] Fluker performed his work on the D/B E.P. PAUP, as well as on a materials barge and the platform itself.  During this time, Mr. Fluker's direct supervisor was Mark Blanchard, the welding foreman employed by Manson Gulf.  Before each shift, the barge Captain, employed by Manson Gulf, conducted a safety meeting.  C&G did not provide supervisors or representatives to the Manson Gulf job site.

---

[1]  Mr. Fluker had previously worked for C&G, but this job was his first with C&G since 2013.  For this particular job, Mr. Fluker was paid for 109.5 hours of work and travel; of that time, 96 hours were logged for work only, rather than for mixed work and travel time.

2

On August 1, 2015, Fluker was welding an I-beam to the deck of the platform owned by Fieldwood Energy.  Tim Theriot, a certified and experienced crane operator employed by Manson Gulf, was operating the crane on the deck of the barge, the D/B E.P. PAUP.  On that day, the crane was operating normally, and, pursuant to routine practice, Matt Goubert, a Manson Gulf employee, served as the only flagman signaling the crane.  Between approximately 7:00 and 8:00 a.m., the crane's hook snagged the partially welded I-beam and tore it from the deck; Mr. Fluker alleges that the I-beam struck him in his face and head, knocking him backwards to the deck.

Later that same day, Goubert submitted a near-miss report to Manson Gulf personnel, indicating that the crane had caught and lifted the I-beam, but that the welder jumped out of the way and no one was injured.  On August 6, 2015, Mr. Fluker informed C&G for the first time that he was involved in an incident on August 1, 2015.  On August 7, 2015, Chad Callais, safety supervisor for C&G, arranged for Mr. Fluker to receive medical treatment.  Three days later, Mr. Fluker informed Callais that his symptoms had improved.  On August 14, 2015, however, he informed Callais that he might need additional treatment; in response, Callais offered to take Fluker to receive treatment that day.  Fluker declined this offer and told Callais that he would return to the office on the morning of August 17, 2015 to seek additional treatment.  Mr.

Fluker did not return to receive the additional medical treatment offered.

On September 4, 2015, Fluker sued Manson Gulf and C&G Welding, alleging that he was a Jones Act seaman injured when he was struck by the crane on the BARGE E.P. PAUP. According to his complaint, the plaintiff suffered severe injuries to his back and neck; he seeks to recover $2,000,000 for Jones Act negligence, as well as unseaworthiness of the barge, along with maintenance and cure. In particular, plaintiff submits that the defendants failed to: provide him with a safe place to work, see what should have been seen, give proper and appropriate warnings, adequately plan the operation ongoing at the time of the incident, properly communicate during the operation ongoing at the time of the incident, and provide an adequate number of crewmembers for the task at hand. On September 15, 2015, plaintiff filed an amended complaint; he demands maintenance in an amount of $40.00 per day, cure for his outstanding and future medical expenses related to this incident, and punitive damages to the extent that defendants have willfully and wantonly failed to pay maintenance and cure benefits. The defendants now seek summary judgment on the issues of seaman status, Jones Act negligence, and unseaworthiness.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress

his claims.  <u>Id</u>.   Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2).  "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  <u>Hathaway v. Bazany</u>, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted).  In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party.  <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007).  Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  <u>Antoine v. First Student, Inc.</u>, 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

II.

*A.*

To maintain a cause of action under the Jones Act or general maritime law, the plaintiff must be a seaman.  <u>See</u> <u>Hall v. Diamond M Co.</u>, 732 F.2d 1246, 1248 (5th Cir. 1984).  To qualify as a Jones Act seaman, one must show that (1) his duties contributed to the function of the vessel or to the accomplishment of its mission and

6

(2) his connection with the vessel in navigation (or an
identifiable group of vessels) was substantial in both its duration
and nature. Chandris, Inc. v. Latsis, 515 U.S. 347, 368-69 (1995).
The purpose of the test in Chandris is to distinguish vessel-based
workers from land-based workers who do not qualify as "seamen"
under the Jones Act. Id. at 348. Seaman status turns on "the nature
of the seaman's service, his status as a member of the vessel, and
his relationship as such to the vessel and its operation in
navigable waters." Id. at 359-60 (citing Swanson v. Marra Brothers,
Inc., 328 U.S. 1, 7 (1946)). "To satisfy the first prong of the
Chandris test, the claimant need only show that he 'do[es] the
ship's work.'" In re Endeavor Marine, Inc., 234 F.3d 287, 290 (5th
Cir. 2000).  This requirement is very broad. Id. To determine
whether a worker's connection with the vessel was substantial in
nature and duration under the second prong,

> the total circumstances of an individual's employment
> must be weighed to determine whether he had a sufficient
> relation to the navigation of vessels and the perils
> attendant thereon. The duration of a worker's connection
> to a vessel and the nature of the worker's activities,
> taken together, determine whether a maritime employee is
> a seaman because the ultimate inquiry is whether the
> worker in question is a member of the vessel's crew or
> simply a land-based employee who happens to be working
> on the vessel at a given time.

Chandris, 515 U.S. at 370 (internal quotations and citations
omitted).  To assess the temporal element of the second prong, the
Supreme Court has adopted a rule of thumb: "A worker who spends

less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." Id. at 371.  Moreover, the Fifth Circuit has held that "[f]ixed platforms are not vessels." Becker v. Tidewater, Inc., 335 F.3d 376, 391 (5th Cir. 2003).

Although the seaman inquiry is a mixed question of fact and law, "summary judgment or a directed verdict is mandated where the facts and law will reasonably support only one conclusion." Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 554 (1997) (quoting McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356 (1991)). In other words, "where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict." Chandris, 515 U.S. at 371.

B.

C&G and Manson Gulf dispute that Fluker was a seaman and seek partial summary judgment on the plaintiff's seaman status. Defendants contend that Fluker does not satisfy the second prong of the seaman status test because his connection with the D/B E.P. PAUP was substantial in neither duration, nor nature.[2]  Mark Blanchard, Wayne Fluker's direct supervisor, states in his

---

[2] Defendants concede that the plaintiff satisfies the first prong of the Chandris test.

affidavit: "From July 30, 2015 to August 7, 2015, approximately 75-85% of the work performed by the welders under my supervision occurred on the platform located in the Mississippi Canyon Block 148A." Wayne Fluker counters that his connection to the D/B E.P. PAUP was substantial in nature because he lived and worked aboard the vessel in the Gulf of Mexico while performing his duties as a welder disassembling an oil platform and was regularly exposed to the perils of the sea. He, too, submits an affidavit in which he states that "fifty percent (50%) or less of [Fluker's] work occurred on the platform." These dueling affidavits create a classic factual controversy, making summary relief inappropriate.

III.

*A.*

Under the Jones Act, 46 U.S.C. § 688, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury, in whole or in part. Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997)(en banc). To prevail in a Jones Act negligence claim,

> the plaintiff must present some evidence from which the fact finder can infer that an unsafe condition existed and that the vessel owner either knew, or in the exercise of due care should have known, of the condition.

Martinez v. Offshore Specialty Fabricators, Inc., 481 Fed.Appx. 942, 945, 947 (5th Cir. July 25, 2012) (citing Perry v. Morgan Guar. Trust Co. of N.Y., 528 F.2d 1378, 1379 (5th Cir. 1976).

9

A Jones Act employer has the duty to provide his seaman employees with a reasonably safe place to work, including providing reasonably suitable gear. Colburn v. Bunge Towing, Inc., 883 F.2d 372, 374 (5th Cir. 1989).  The duty to provide a safe place to work is broad in scope, but it is not a form of strict liability; ordinary prudence under the circumstances is the standard for the duty of care owed by an employer to a seaman. Gautreaux, 107 F.3d at 335-36.  Likewise, seamen are held to the standard of the reasonable seaman in like circumstances. Id. at 339 (explaining that the circumstances include the employee's reliance on his employer to provide a safe working environment, the seaman's experience, training, or education).  And the causation standard is the same for both the employer's negligence and contributory negligence: causation is established if the party's "negligence played any part, even the slightest, in producing the injury". See Martinez, 481 Fed.Appx. at 947 (quoting Johnson v. Cenac Towing, Inc., 544 F.3d 296, 303 (5th Cir. 2008)).  However, more than mere "but for" causation must be established. Johnson v. Cenac Towing, Inc., 544 F.3d 296, 302 (5th Cir. 2008)(citation omitted).

C&G contends that the plaintiff has failed to present any evidence to support a negligence claim and, in light of the following record facts, among others, summary relief is appropriate: the C&G personnel on the platform at the time of the incident were under the direction and supervision of Manson Gulf

10

personnel; the crane operator and signal man on the platform directing crane operations were employees of Manson Gulf; plaintiff testified that he was well trained for his job duties as a welder; C&G had no reason to believe that Fluker was involved in an incident resulting in alleged injury until August 6, 2015, at which time it provided him with medical care; and Fluker performed similar work on the days prior to the alleged incident without any complaints of unsafe work conditions.

Moreover, when asked how C&G was negligent in causing or contributing to the incident or his alleged injuries, Fluker responded: "I had told them that I was hurt, and you know, they was asking me you know, in – in a funny way, are you ready to go back to work? Are you ready to go back to work?"  Although C&G's offer for the plaintiff to return to work offshore following his injury may be concerning, it is not material as to whether or not C&G acted negligently in contributing to his alleged injuries.

The plaintiff simply presents no evidence indicating how C&G was negligent in causing or contributing to the incident or his alleged injuries.  Significantly, "a Jones Act employer is not an insurer of a seaman's safety; the mere occurrence of an injury does not establish liability." Marvin v. Central Gulf Lines, Inc., 554 F.2d 1295, 1299 (5th Cir.), cert. denied, 434 U.S. 1035 (1978). Here, there is no evidence suggesting that C&G provided Fluker with inadequate training, failed to provide him with a reasonably

safe place to work, or caused or contributed to his injury by asking whether he was ready to return to work.   Because the plaintiff cannot establish an essential element of his Jones Act negligence claim, summary judgment in C&G's favor is warranted.

*B.*

Independent from a claim under the Jones Act, a seaman has a claim for injuries caused by the unseaworthiness of a vessel under general maritime law.   The duty of a vessel owner to provide a seaworthy vessel is an absolute non-delegable duty; the duty imposes liability without fault.   See <u>Mitchell v. Trawler Racer, Inc.</u>, 362 U.S. 539, 548-49, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).   A ship is seaworthy if the vessel, including her equipment and crew, is reasonably fit and safe for the purposes for which it was intended to be used.   <u>Boudreaux v. United States of America</u>, 280 F.3d 461, 468 (5th Cir. 2002)(citation omitted); <u>Boudoin v. Lykes Bros. S.S. Co.</u>, 348 U.S. 336, 339, 75 S.Ct. 382, 99 L.Ed. 354 (1955) ("The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm but a vessel reasonably suited for her intended service.").

Unseaworthiness is not a fault-based standard; a plaintiff must show, however, that the unseaworthy condition "played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably

12

probable consequence of the unseaworthiness." Phillips v. Western Co. of North America, 953 F.2d 923, 928 (5th Cir. 1992). "[A]n isolated personal negligent act of the crew" is not enough to render a ship unseaworthy. Daughdrill v. Ocean Drilling & Exploration Co., 709 F. Supp. 710, 712 (E.D. La. 1989). Instead, there should be evidence of "a congeries of acts." Id. (quoting Robinson v. Showa Kaiun K.K., 451 F.2d 688, 690 (5th Cir. 1971)).

"A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage might be improper." Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 517-18, 27 L.Ed.2d 562 (1971)(internal citations omitted); see also Webb v. Dresser Indus., 536 F.2d 603, 606 (5th Cir. 1976), cert. denied 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1977). A vessel is unseaworthy when an unsafe method of work is used to perform vessel services. Rogers v. Eagle Offshore Drilling Serv., 764 F.2d 300, 303 (5th Cir. 1985); Burns v. Anchor-Wate Co., 469 F.2d 730 (5th Cir. 1972).[3]

---

[3] A seaman has a duty under both the Jones Act and general maritime law to act as an ordinary prudent seaman would act in the same or similar circumstances. Jackson v. OMI Corp., 245 F.3d 525, 528 (5th Cir. 2001). If a seaman's negligence contributes to his injury, his "contributory negligence will not bar his recovery,

C&G seeks summary judgment dismissing the plaintiff's unseaworthiness claim against it. C&G contends that the duty of seaworthiness does not apply to it, since C&G does not own the D/B E.P. PAUP, the vessel in question. See Coakley v. SeaRiver Maritime, Inc., 319 F. Supp. 2d 712, 715 (E.D. La. 2004), aff'd, 143 F. App'x 565 (5th Cir. 2005). Because the record discloses no genuine dispute of material facts concerning Manson Gulf's exclusive ownership of the barge, summary judgment in favor of C&G is appropriate.

Finally, Manson Gulf seeks summary judgment dismissing the plaintiff's unseaworthiness claim against it. Mr. Fluker contends that the D/B E.P. PAUP was unseaworthy because an inadequate number of crewmembers were assigned to a shipboard task. Specifically, Fluker submits, and Manson Gulf's safety manager concedes, that a crewmember should have been assigned to hold the tagline attached to the hook of the crane. Fluker further contends that Manson Gulf's failure to assign a crewmember to this task directly and proximately caused the incident and his corresponding injuries.[4]

---

but may reduce the amount of damages owed proportionate to his share of fault." Jauch v. Nautical Services, Inc., 470 F.3d 207, 213 (5th Cir. 2006).

[4] Aside from his contention that an inadequate number of crewmembers manned the tagline attached to the vessel's crane, Fluker submits no evidence indicating that the vessel itself, any appurtenance of the vessel, or the crew of the vessel was not fit for its intended use.

14

Manson Gulf counters that the failure to appoint a crewmember to man the tagline at the time of the incident constitutes an isolated personal negligent act of the crew and does not render the D/B E.P. PAUP unseaworthy.  The Court agrees.  The plaintiff does not allege, and the record evidence does not indicate, that the incident arose from a congeries of negligent acts.  Because the plaintiff fails to establish an essential element of his unseaworthiness claim, summary judgment in Manson Gulf's favor is warranted.

Accordingly, for the foregoing reasons, Manson Gulf and C&G's partial motion for summary judgment on seaman status is hereby DENIED; C&G's motion for summary judgment on Jones Act negligence and seaworthiness is GRANTED; and Manson Gulf's motion for summary judgment on seaworthiness is GRANTED.  The plaintiff's Jones Act negligence and seaworthiness claims are hereby dismissed.  Insofar as the trier of fact will be charged with determining the plaintiff's seaman status, his claims for maintenance and cure and punitive damages for the defendants' willful or wanton failure to pay maintenance and cure benefits remain. Counsel should be mindful of 28 U.S.C. § 1927 in pursuing the remaining claims.[5]

_____

[5] Pursuant to 28 U.S.C. § 1927,

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and

New Orleans, Louisiana, June 16, 2016

MARTIN L.C. FELDMAN
U.S. DISTRICT JUDGE

---

vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.